No. 84-544

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

CITY OF WHITEFISH,

Plaintiff and Respondent,

-vs-

BRIAN J. O'SHAUGHNESSY,

Defendant and Appellant.

_____

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable James M. Salansky, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Neil E. Halprin argued, Missoula, Montana

For Respondent:

Leif B. Erickson argued, Whitefish, Montana

_____

Submitted: May 2, 1985

Decided: June 26, 1985

Filed: JUN 26 1985

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The appellant, Brian O'Shaughnessy, was charged with two counts of disturbing the peace. A Whitefish City Court convicted him on both counts. On appeal the District Court convicted him on one count of disturbing the peace. He was sentenced to five days in jail and fined $350. This appeal followed and is the second time this matter has been before this Court.

The following issues are presented for this Court's consideration:

1. Whether the appellant's behavior constituted disturbing the peace when, allegedly, a breach of peace must contain a threat of violence or pose a threat of a violent response and, allegedly, neither threat was present in this instance.

2. Whether section 7-32-4302, MCA, which empowers cities and towns to prevent and punish disturbances of the peace, section 45-8-101(1), MCA, which defines the offense of disorderly conduct, and Whitefish Municipal Ordinance 9.64.010, which defines the offense of disturbing the peace, are unconstitutional for vagueness and overbreadth.

3. Whether the sentence imposed on the appellant was excessive in light of a similar state statute with a maximum penalty less than that imposed in this instance.

The appellant appealed to the District Court of the Eleventh Judicial District. The District Court dismissed the appeal from the City Court judgment on December 5, 1983.

The appellant appealed to this Court. This Court vacated the District Court order dismissing the appeal from City Court.

Trial was then had at District Court on September 17, 1984. A six person jury convicted the appellant of one count

- 2 -

of disturbing the peace. Appellant was then sentenced to five days in jail and fined $350. This appeal followed.

In part, the parties set forth different versions of the facts. Both do agree that the appellant had just closed his restaurant and bar at about 2:00 a.m., February 22, 1983, and was proceeding with a friend and an employee towards another restaurant. While walking, the appellant and his friends were approached by a patrol car operated by Officer Merkley of the Whitefish Police Department. The parties set forth different versions of the facts as to what then occurred.

The appellant, Brian O'Shaughnessy, admits that he and his friends were engaged in a conversation that was louder than normal. As Officer Merkley's patrol car approached, appellant waived at the officer and they then engaged in a conversation. During the conversation the officer told appellant to "hold it down." According to the appellant, at the close of the conversation he approached the officer and said, in a friendly way, "Give me five, [f.'er]." The officer then arrested the appellant.

The respondent, City of Whitefish, alleges that Officer Merkley had heard loud hollering from a block or more away and thought that a fight or argument was going on. The officer approached appellant and told him to "hold it down" and did so because there were a number of apartments in the area. The appellant then told the officer that he could not hold it down because it was such a "beautiful day." The officer asked the appellant three to five times to "keep it down" and warned appellant of a possible arrest for disturbing the peace.

The respondent alleges that the appellant got into the back of the patrol car and was asked to get out. After removing himself he got into the patrol car again and was asked to get out. Then the appellant wanted to shake hands

- 3 -

with the officer but the officer refused. Appellant then said, "Well, [m.f.], I will holler and yell when and wherever I want if I want to . . ." This was said "visually" and directly to the officer. The appellant was then arrested. The respondent alleges that the appellant continued to be vulgar and threatening after the arrest, and before a female employee working at the desk at the police station.

As to the first issue, the appellant argues that he did not threaten violence and there was no threat of a violent response so there could be no breach of peace. The facts are to the contrary. The jury found that the appellant stated "Well, [m.f.] . . .", and that this statement was made willfully, maliciously, visually, and directly to the officer, and that the language used constituted "fighting" words.

While the record does not contain a charging instrument, it is clear that the appellant was charged under the following ordinance:

> "Whitefish Municipal Ordinance, 9.64.010. No person within the municipality, or within three miles of the municipal limits, shall willfully and maliciously disturb the peace and quiet of any street, neighborhood, family, or person by loud, tumultuous noise, or by tumultuous or offensive conduct, or by using offensive, loud radio or television sets, or by threatening, quarreling, scolding, hallooing, hollering, challenging to fight, or fighting, or by cursing, swearing, uttering obscene, profane, vulgar, or indecent language in the presence of any person or persons, or by commiting any obscene, vulgar, indecent, or lewd act in any public place, or in view of any person or persons."

The record shows that this breach of peace charge is not based on the "loud noise" of the appellant and his friends while they were talking before the police officer arrived. The District Court instructed the jury on this point:

> "The two offenses of disturbing the peace with which defendant is charged do not involve the allegations that he made loud noises." (Instruction No. 10.)

- 4 -

The District Court specifically instructed the jury on the law set forth in the ordinance under which appellant was charged:

> "No person within the municipality shall willfully and maliciously disturb the peace and quiet of any street, neighborhood, family, or person by loud, tumultuous noise, or by tumultuous or offensive conduct, or by threatening, quarreling, scolding, hallooing, hollering, challenging to fight, or fighting, or by cursing, swearing, uttering obscene, profane, vulgar, or indecent language in the presence of any person or persons." (Instruction No. 5.)

The District Court specifically instructed the jury on the definitions of "willfully" and "maliciously":

> "The word 'willfully,' when applied to the intent with which an act is done or omitted and as used in my instructions, implies simply a purpose or willingness to commit the act or to make the omission in question. The word does not require in its meaning any intent to violate law, as to injure another, or to acquire any advantage. (Instruction No. 6.)
>
> "The words 'malice' and 'maliciously' mean a wish to vex, annoy, or injure another person, or an intent to do a wrongful act.
>
> "If you find that the defendant's conduct was not malicious--in other words, not done with the intent of annoying or injuring another person, then you must find the defendant not guilty as charged." (Instruction No. 7.)

The District Court also specifically instructed the jury that the words and language of the defendant must have been "fighting words":

> "You are instructed that the words and language of the defendant must have been of such nature that men of common intelligence would understand would be words likely to cause an average person hearing such words to fight. Threatening profane, and obscene words, said without a disarming smile, are generally considered to be 'fighting words.'" (Instruction No. 9.)

On appeal from a jury trial in a criminal case, the evidence is viewed most favorable to the State, State v. Meader (1979), 184 Mont. 32, 43, 601 P.2d 386, 392. The State's version of the offensive remarks is the one we must consider. The charge and conviction have to do with the

- 5 -

appellant's offensive statement to the police officer, that is, "Well, [m. f.], I will holler and yell when and wherever I want to . . . ." Here, the jury was instructed as to the required elements of this offense--willful and malicious--and the jury heard testimony that the appellant made the offensive remarks "visually" and directly to the officer. In addition the jury was instructed that it must find "fighting" words to convict. For our purposes the statement made will be referred to with that context in mind.

The right to free speech is Constitutionally protected. Congress shall make no law abridging the freedom of speech. U.S. Const. amend. I. The states are bound by the guarantees of the First Amendment through the due process clause of the Fourteenth Amendment. Gitlow v. New York (1925), 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138. Our law in Montana provides that no law shall be passed impairing the freedom of speech and every person shall be free to speak whatever he will on any subject, being responsible for all abuse of that liberty. 1972 Mont. Const., art. II, § 7.

The right to free speech, however, is not absolute. In Chaplinsky v. New Hampshire (1942), 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031, where a person had been taken into custody by a traffic officer and while being escorted to city hall had, upon meeting a city marshall, said "You are a God damned racketeer . . . a damned Fascist . . . ." The Supreme Court stated:

> "Allowing the broadest scope of the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words--those which by their very utterance inflict injury or tend to incite an immediate breach of peace. It has been well observed that such utterances are no essential part

of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Chaplinsky, 315 U.S. at 573.

Chaplinsky was specifically reaffirmed in Gooding v. Wilson (1972), 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408, wherein it was noted that a state has the power constitutionally to punish "fighting" words under carefully drawn statutes not susceptible of application to protected expression. Gooding specifically reaffirmed Chaplinsky, however, the statute in Gooding was ruled overbroad.

This Court holds that the jury properly found that the appellant's speech was "fighting" words, and that by definition a threat of violence or threat of violent response was present.

As to issue two, whether section 7-32-4302, MCA, which empowers cities and towns to prevent and punish disturbances of the peace, section 45-8-101(1), MCA, which defines the offense of disorderly conduct, and Whitefish Municipal Ordinance 9.64.010, which defines the offense of disturbing the peace, are unconstitutional for vagueness and overbreadth, the statutes and ordinance allegedly in issue read as follows:

> "7-32-4302. Control of disturbances of the peace. Within the city or town and within 3 miles of the limits thereof, the city or town council has power to prevent and punish intoxication . . ., fights, riots, loud noises, disorderly conduct, obscenity, and acts or conduct calculated to disturb the public peace or which are offensive to public morals."

Section 45-8-101, MCA provides:

> "Disorderly conduct. (1) A person commits the offense of disorderly conduct if he knowingly disturbs the peace by:
>
> "(a) quarreling, challenging to fight, or fighting;
>
> "(b) making loud or unusual noises;

"(c) using threatening, profane, or abusive language;

" . . .

"(2) A person convicted of the offense of disorderly conduct shall be fined not to exceed $100 or be imprisoned in the county jail for a term not to exceed 10 days, or both."

See also Whitefish Municipal Ordinance, 9.64.010., supra.

The primary concern here is whether the statutes and ordinance are unconstitutionally vague or overbroad. Also, more specifically in this case, whether the statutes and ordinance were used or could be used as a vehicle to punish or prohibit protected speech or chill the right to free speech.

Before any discussion of the constitutionality of the statutes, it is important to note in this case that section 45-8-101, MCA, Disorderly conduct, is not properly before this Court. The appellant was not charged under this statute. Also, section 7-32-4302, MCA, Control of disturbances of the peace, is only peripherally involved if, as interpreted by respondent, it is not in itself a criminal statute. It can be interpreted as simply empowering the respondent to pass a law on the subject.

The right to freedom of speech is not absolute and certain types of speech may be regulated if the regulating statutes are designed properly. A statute may be held unconstitutional if it is vague or overbroad. 12 A.L.R. 3rd. 1448. Vagueness and overbreadth are related concepts often spoken of together. A statute must be drawn with sufficient clarity and definiteness to inform persons of ordinary intelligence what actions are proscribed (vagueness) and it cannot be susceptible of reaching constitutionally protected activity (vagueness and overbreadth).

- 8 -

The elements of the void-for-vagueness doctrine were assembled in Grayned v. City of Rockford (1972), 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222. It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, we assume that man is free to steer between lawful and unlawful conduct, and we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked. Grayned, 408 U.S. at 108, 109.

The Supreme Court also defined overbreadth in Grayned. A clear and precise enactment may nevertheless be "overbroad" if in its reach it prohibits constitutionally protected conduct. The crucial question here is whether the ordinance sweeps within its prohibitions what may not be punished constitutionally. Grayned, 408 U.S. at 114, 115.

Several cases with facts approaching those in the instant case have been heard by the United States Supreme Court. Those cases have held that for an ordinance or law to be constitutional, the statute regulating speech must be

facially limited to or construed narrowly and limited to words with a natural tendency to create a threat of violence.

In Chaplinsky v. New Hampshire, supra, where the person arrested for saying "You are a God damned racketeer . . ." to a city marshall, the conviction was affirmed. The statute in question was:

> "No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name . . ." Chaplinsky, 315 U.S. at 569.

However, the highest court of New Hampshire narrowly construed the statute as only applying to words that had a direct tendency to violence. With the scope limited by the courts of New Hampshire, the United States Supreme Court held that it did not contravene the Constitutional right to free expression. Chaplinsky, 315 U.S. at 573.

In Gooding v. Wilson, supra, the Court held that where a person said, "White son of a bitch, I'll kill you . . . you son of a bitch, I'll choke you to death . . ." to officers. The conviction was overturned. The statute in question was:

> "Any person who shall, without provocation, use to or of another, and in his presence . . . opprobrious words or abusive language, tending to cause a breach of the peace. . ." Gooding, 315 U.S. at 519

The United States Supreme Court in Gooding stated that it does not matter that the words used might have been constitutionally prohibited under a proper narrowly and precisely drawn statute. If the statute has not been narrowly construed to be limited in application as in Chaplinsky and is capable of prohibiting or punishing protected speech it is unconstitutional because it is easily susceptible to improper application. Gooding, 405 U.S. at 524, 528.

In Lewis v. City of New Orleans (1974), 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214, where a person was arrested for

saying, "you God damn m. f. police. . ." to a police officer, the conviction was overturned. The statute in question was:

> "It shall be unlawful and a breach of the peace for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty." Lewis, 415 U.S. at 132.

The Supreme Court found that this statute was susceptible of application to protected speech. It was held constitutionally overbroad and facially invalid. Lewis, 415 U.S. at 134.

Recently, in Wurtz v. Risley (9th Cir. 1983), 719 F.2d 1438, part of a Montana intimidation statute, § 45-5-203(1)(c), MCA (1981), was held void for overbreadth. The Ninth Circuit, citing Gooding, held that statutes punishing expressive conduct must be carefully drawn or authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression. Wurtz, 719 F.2d at 1441.

The particular ordinance in issue in the present case is distinguishable from several of the statutes construed by the United States Supreme Court in the cases mentioned above. This ordinance requires the elements willful and malicious. In addition, the District Court took many measures to insure that the appellant was convicted for expressive conduct only if it included the required element of violence.

Speaking to the question of overbreadth doctrine, the United States Supreme Court in Broadrick v. Oklahoma (1973), 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830, 842, delineated important limitations on its use:

> "[f]acial overbreadth adjudication is an exception to our traditional rules of practice and . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct--even if expressive--falls

within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect--at best a prediction-- cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe . . . "

We affirm the narrow construction on the part of the District Court in construing the Whitefish Ordinance through its instructions, which required that not only must the defendant have willfully and maliciously disturbed the peace by uttering the language in question, but that the words and language of the defendant must have been of such a nature that men of common intelligence would understand that the words were likely to cause an average person to fight and with the further instruction that threatening, profane and obscene words, said without a disarming smile, are generally considered to be "fighting words." Because we construe the Whitefish Ordinance narrowly as only applying to words that have a direct tendency to violence and which are willfully and maliciously uttered, we conclude that the Ordinance is not unconstitutional for vagueness and overbreadth.

Section 7-5-109, MCA, provides that a local government may fix penalties for the violation of an ordinance which do not exceed a fine of $500 or 6 months' imprisonment or both the fine and imprisonment. Whitefish has enacted a "general penalty" ordinance under which appellant was sentenced. This "general penalty" ordinance is within the limits of section 7-5-109, MCA.

The judgment is affirmed.

John Conway Harrison .
Justice

12

We concur:

_____
Chief Justice

_____

_____

_____
L. C. _____

_____

John C. Sheely
_____
Justices

13

Mr. Justice William E. Hunt, Sr., dissenting:

I dissent and would reverse.

Appellant was convicted of one count of disturbing the peace. Cities and towns in Montana are empowered to prevent and punish disturbances of the peace by § 7-32-4302, MCA, which defines "disturbances of the peace" as follows:

". . . intoxication . . . fights, riots, loud noises, disorderly conduct, obscenity, and acts or conduct calculated to disturb the public peace or which are offensive to public morals."

According to § 45-8-101(1), MCA, "A person commits the offense of disorderly conduct if he knowingly disturbs the peace by:

(a) quarrelling, challenging to fight or fighting;

(b) making loud or unusual noises;

(c) using threatening, profane, or abusive language . . .."

Appellant was charged and convicted of violating Whitefish Municipal Ordinance 9.64.010 which provides:

"No person within the municipality, or within three miles of the municipal limits, shall willfully and maliciously disturb the peace and quiet of any street, neighborhood, family, or person by loud, tumultuous noise, or by tumultuous or offensive conduct, or by using offensive, loud radio or television sets, or by threatening, quarreling, scolding, hallooing, hollering, challenging to fight, or fighting, or by cursing, swearing, uttering obscene, profane, vulgar, or indecent language in the presence of any person or persons, or by committing any obscene, vulgar, indecent, or lewd act in any public place, or in view of any person or persons."

Many courts, including the United States Supreme Court, have held that an act constitutes a disturbance of the peace or breach of the peace only if it poses an immediate threat of violence or would tend to provoke violence from others.

-14-

Of the several events that occurred surrounding this arrest it is quite probable that a lawful arrest could have resulted if for the proper reasons. Here, though, the record shows that the defendant was arrested and convicted solely on the basis of an expression which the peace officer took personally. When an officer of the law, as a public servant, approaches a citizen and the latter becomes irate for some reason and unleashes some verbal abuse, no arrest should be made on that basis alone. A public servant, particularly an officer of the law, who is not at times (rightfully or wrongfully) the subject or object of someone's aggravation is simply not doing his or her job. A policeman meeting an intoxicated citizen has a reasonable expectation of some conflict. A policeman in the performance of his duty should be able to take an insult with a proverbial "grain of salt." When grounds for arrest exist but no arrest occurs until the arresting officer is insulted it is a strong indication that the arrest is for a personal reason rather than for the public good. Here the defendant who had apparently been drinking gave no indication of committing violence although he was sounding off with abusive and offensive language.

While I agree with the majority that the right to free speech is not absolute, that right is so important that there should be great care in respecting it even when the language contains words that reasonable people find to be offensive and unacceptable. Intoxicated people do not often speak with eloquence but are more likely to express themselves in language that is base and coarse. Those in authority should be very careful about taking such remarks personally and careful about exercising their power as a weapon of retribution.

Appellant's conduct on the night in question did not pose a threat of violence to the members of the Whitefish community, nor did it pose a threat to the police officers involved.

In Chaplinsky v. New Hampshire (1942), 315 U.S. 568, 573, 62 S.Ct. 766, 770, 86 L.Ed. 1031, 1036, the Court, in upholding the conviction for breach of the peace by the lower court, construed the applicable statute narrowly, limiting its application to instances of actual immediate threats of violence:

> "The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight . . .. Such words, as ordinary men know, are likely to cause a fight . . .. Derisive and annoying words can be taken as coming within the purview of the statute as heretofore interpreted only when they have the characteristic of plainly tending to excite the addressee to a breach of the peace . . .. The statute, as construed, does no more than prohibit the face-to-face words plainly likely to cause a breach of the peace by the addressee . . ."

In Terminiello v. Chicago (1949), 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131, 1134, reh. denied 337 U.S. 934, 69 S.Ct. 1490, 93 L.Ed. 1740, the Court held that, for an utterance to constitute a beach of the peace, it must pose a threat far above mere public annoyance or unrest:

> ". . . freedom of speech, though not absolute . . . is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."

There is nothing in the record to show that appellant's conduct would "likely produce a clear and present danger of a serious substantive evil."

The Minnesota Supreme Court, faced with this same question and a similiar statute, said in Matter of the Welfare of S.L.J. (Minn. 1978), 263 NW.2d 412, 419-420:

"Having narrowly construed § 609.72, subd. 1(3), we must now determine whether the words 'fuck you pigs' were 'fighting words.' The real test is whether, under the facts and circumstances of this case, appellant's mere utterance of these vulgar, offensive, insulting words would '"tend to incite an immediate breach of the peace,"' Lewis v. City of New Orleans, 415 U.S. 130, 132, 94 S.Ct. 970, 972, 39 L.Ed.2d 214, 218; are 'inherently likely to provoke violent reaction,' Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, 291; or 'hav[e] an immediate tendency to provoke retaliatory violence or tumultuous conduct by those to whom such words are addressed,' State v. Hipp, 298 Minn., 81, 87, 213 N.W.2d. 610, 614. The specific facts of the case are also important because, as in Lewis, whether words are 'fighting words' depends on the circumstances surrounding their utterance.

"Under this test, appellant's conviction for disorderly conduct cannot stand. While it is true that no ordered society would condone the vulgar language used by this 14-year-old child, and as the court found, her words were intended to and did arouse resentment in the officers, the constitution requires more before a person can be convicted for mere speech. In this case, the words were directed at two police officers sitting in their squad car from a distance of 15 to 30 feet by a small, 14-year-old child who was on her way home when she turned to the officers and made her statement. With the words spoken in retreat from more than 15 feet away away rather than eye-to-eye, there was no reasonable likelihood that they would tend to incite an immediate breach of the peace or to provoke violent reaction by an ordinary, reasonable person. Thus, the state has failed to prove that under these circumstances the words uttered by appellant were 'fighting words' and both her conviction for disorderly conduct and the finding of delinquency based on the conviction must be reversed."

The facts in this case, while stronger perhaps than in the Minnesota case still fall far short of being "fighting words," sufficient to incite violence.

Further, I would reverse because I cannot agree that the Whitefish ordinance by itself, would pass a constitutional analysis under any current United States Supreme Court decision. This Court now states that it "narrowly construes" the ordinance. Narrow construction does bring an overly broad ordinance within the Constitution, but not

without a proper analysis and guidance to the public as to how the ordinance is to be construed. It is doubtful whether the ordinance in issue here can be legitimately narrowly construed by this Court without rewording the entire ordinance.

I would reverse.

Justice

-18-