No. 02-764

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 354

STATE OF MONTANA,

>Plaintiff and Respondent,

v.

NATHANIEL F. LEESON,

>Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. ADC-01-470-1,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

>For Appellant:

>Sunday Z. Rossberg, Rossberg Law Office LLC, Great Falls, Montana

>For Respondent:

>Hon. Mike McGrath, Attorney General; Pamela P. Collins,
Assistant Attorney General, Helena, Montana

>Brant Light, Cascade County Attorney; Susan Weber, Chief Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  May 29, 2003

Decided:   December 18, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Appellant Nathaniel Leeson (Leeson) was charged in Montana's Eighth Judicial District Court with operation of an unlawful clandestine laboratory in violation of § 45-9-132, MCA (2001).  He filed a Motion to Dismiss arguing § 45-9-132, MCA (2001), is unconstitutionally vague and overbroad.  The District Court denied the motion.  Leeson appeals. We affirm the District Court.

¶2     We address the following issues on appeal:

¶3     1.  Did the District Court err in finding that § 45-9-132, MCA (2001), is not unconstitutionally vague on its face?

¶4     2.  Is § 45-9-132, MCA (2001), unconstitutionally overbroad?

BACKGROUND

¶5     Nathaniel Leeson was charged by Information for violating § 45-9-132, MCA (2001), which is entitled "Operation of unlawful clandestine laboratory–penalties."  The affidavit filed in support of the Information alleges that a van occupied by Leeson contained numerous items that could be used to operate an unlawful clandestine laboratory, including 27 pseudoephedrine boxes,  two cans of acetone, Rooto drain cleaner, iodized salt, two plastic coolers smelling of ammonia, a plastic baggie of white powder, plastic tubing attached to a plastic bottle top and two funnels, a scale with white powder on it, rubber gloves, two syringes, and a fire extinguisher, among other items.  The affidavit also states that detectives received information that Leeson had been purchasing large amounts of pseudoephedrine pills and references previous encounters law enforcement had with Leeson involving the

2

manufacture of methamphetamine.

¶6 Leeson filed a Motion to Dismiss, arguing that § 45-9-132, MCA (2001), is vague and overbroad in violation of the Fourteenth Amendment of the United States Constitution and Article II, Section 17 of the Montana Constitution. The District Court denied the motion. Leeson later pled guilty to the charges, but through an Order Nunc Pro Tunc preserved his right to appeal § 45-9-132, MCA (2001), as being unconstitutionally vague and overbroad.

## STANDARD OF REVIEW

¶7 "The denial of a motion to dismiss in a criminal case is a conclusion of law which we review to determine whether it was correct." *State v. Dixon*, 2000 MT 82, ¶ 10, 299 Mont. 165, ¶ 10, 998 P.2d 544, ¶ 10. "Our review of questions involving constitutional law is plenary. A district court's resolution of an issue involving a question of constitutional law is a conclusion of law which we review to determine whether the conclusion is correct." *State v. Bedwell,* 1999 MT 206, ¶ 4, 295 Mont. 476, ¶ 4, 985 P.2d 150, ¶ 4 (citation omitted).

## DISCUSSION

## ISSUE ONE

¶8 Did the District Court err in finding that § 45-9-132, MCA (2001), is not unconstitutionally vague on its face?

¶9 The State argues that Leeson does not have standing to challenge the constitutionality of § 45-9-132, MCA (2001). Without regard to whether Leeson has standing, his argument fails on the merits.

¶10 "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *City of Whitefish v. O'Shaughnessy* (1985), 216 Mont. 433, 440, 704 P.2d 1021, 1025. This Court has explained that vague laws offend several important values:

> First, we assume that man is free to steer between lawful and unlawful conduct, and we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.

*O'Shaughnessy*, 216 Mont. at 440, 704 P.2d at 1025-26.

¶11 A statute can be challenged as unconstitutionally vague on its face, or as applied in a particular situation. *State v. Nye* (1997), 283 Mont. 505, 513, 943 P.2d 96, 101. Leeson argues that § 45-9-132, MCA (2001), is unconstitutional on its face. A statute is void for vagueness on its face "if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *Nye*, 283 Mont. at 513, 943 P.2d at 101 (citations omitted).

¶12 Leeson contends that a person of ordinary intelligence may be in possession of supplies, equipment and materials commonly used for other purposes, that *could* be used to manufacture methamphetamine, subjecting that person to arrest for operating an unlawful

4

clandestine laboratory under § 45-9-132, MCA (2001). Section 45-9-132, MCA (2001), provides in relevant part:

> (1) A person commits the offense of operation of an unlawful clandestine laboratory if the person purposely or knowingly engages in:
> (a) the procurement, possession, or use of chemicals, precursors to dangerous drugs, supplies, equipment, or a laboratory location for the criminal production or manufacture of dangerous drugs as prohibited by 45-9-110;
> (b) the transportation of or arranging for the transportation of chemicals, precursors to dangerous drugs, supplies, or equipment for the criminal production or manufacture of dangerous drugs as prohibited by 45-9-110; or
> (c) the setting up of equipment or supplies in preparation for the criminal production or manufacture of dangerous drugs as prohibited by 45-9-110.

¶13    Section 45-9-131, MCA, defines some of the terms used in § 45-9-132, MCA (2001):

> (2) "Equipment" or "laboratory equipment" means all products, components, or materials of any kind when used, intended for use, or designed for use in the manufacture, preparation, production, compounding, conversion, or processing of a dangerous drug as defined in 50-32-101. Equipment or laboratory equipment includes but is not limited to:
> (a) a reaction vessel;
> (b) a separatory funnel or its equivalent;
> (c) a glass condensor;
> (d) an analytical balance or scale; or
> (e) a heating mantle or other heat source.
> (3) "Precursor to dangerous drugs" means any material, compound, mixture, or preparation that contains any combination of the items listed in 45-9-107(1), except as exempted by 45-9-108.

Section 45-9-107, MCA, provides a list of "precursors to dangerous drugs," a term used in both §§ 45-9-131 and -132, MCA (2001):

> (1) A person commits the offense of criminal possession of precursors to dangerous drugs if the person possesses any material, compound, mixture, or preparation that contains any combination of the following with intent to manufacture dangerous drugs:
> (a) phenyl-2-propanone (phenylacetone);

5

(b) piperidine in conjunction with cyclohexanone;
(c) ephedrine;
(d) lead acetate;
(e) methylamine;
(f) methylformamide;
(g) n-methylephedrine
(h) phenylpropanolamine;
(i) pseudoephedrine;
(j) anhydrous ammonia;
(k) hydriodic acid;
(l) red phosphorus;
(m) iodine in conjunction with ephedrine, pseudoephedrine, or red phosphorus;
(n) lithium in conjunction with anhydrous ammonia.

¶14 Leeson does not indicate which term or terms in § 45-9-132, MCA (2001), fail to give proper notice. However, given the specificity of the above statutes, it is difficult to imagine how a person of ordinary intelligence could fail to understand what conduct § 45-9-132, MCA (2001), forbids. Moreover, § 45-9-132, MCA (2001), incorporates the requirement that a person have intent to operate an unlawful clandestine laboratory. Under § 45-9-132, MCA (2001), a person must "purposely or knowingly" engage in the listed activities "for the criminal production or manufacture of dangerous drugs." "[T]he requirement of a mental state to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid." *Nye*, 283 Mont. at 514, 943 P.2d at 102. It would be difficult, if not impossible, for a person to inadvertently purposely or knowingly take action in furtherance of the criminal production or manufacture of dangerous drugs.

¶15 Leeson also argues that § 45-9-132, MCA (2001), is void for vagueness because it lends itself to arbitrary enforcement because it is based upon subjective standards. He cites

testimony by an officer that enforcement of § 45-9-132, MCA (2001), is done on a case-by-case basis using subjective standards. While this may be true, we disagree with Leeson that the subjective nature of the enforcement of § 45-9-132, MCA (2001), renders it unconstitutionally vague. The United States Supreme Court has recognized that even when "standards are undoubtedly flexible, and the officials implementing them will exercise considerable discretion, perfect clarity and precise guidance have never been required . . . ." *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 794, 109 S.Ct. 2746, 2755, 105 L.Ed.2d 661.

¶16    We hold that the District Court did not err when it concluded that § 45-9-132, MCA (2001), is not unconstitutionally vague.

## ISSUE TWO

¶17    Is § 45-9-132, MCA (2001), unconstitutionally overbroad?

¶18    The State argues that Leeson waived his right to challenge § 45-9-132, MCA (2001), as overbroad because he did not properly raise it before the District Court. Once again, without regard to the State's waiver argument, Leeson's argument fails on the merits.

¶19    "A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *O'Shaughnessy*, 216 Mont. at 440, 704 P.2d at 1026. "An overbroad statute is one that is designed to burden or punish activities which are not constitutionally protected, but the statute includes within its scope activities which are protected by the First Amendment." *State v. Martel* (1995), 273 Mont. 143, 152, 902 P.2d 14, 20.

7

¶20 Leeson contends that § 45-9-132, MCA (2001), is unconstitutionally overbroad because it subjects innocent people to being arrested for possessing certain items which are otherwise legal to possess, if such items could be used to manufacture methamphetamine. However, as we stated in *Nye*, "the claimed overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep, particularly where conduct and not merely speech is involved." *Nye*, 283 Mont. at 515, 943 P.2d at 103. Here, Leeson has not demonstrated how § 45-9-132, MCA (2001), might infringe on constitutionally protected rights in a real or substantial way.

¶21 In *Nye* we explained that when the claimed overbreadth of a statute is not substantial and real, the statute is not unconstitutional on its face, but that an unconstitutional application of the statute should be dealt with on a case-by-case basis. *Nye*, 283 Mont. at 515, 943 P.2d at 103. Here, Leeson does not argue that the statute is unconstitutional as applied. Therefore, we hold that § 45-9-132, MCA (2001), is not unconstitutionally overbroad.

¶22 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER

8