No. 03-522

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 321

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

EARL GALE FELLERS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDC 2002-099
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Michael R. Tramelli, Attorney at Law, Great Falls, Montana

        For Respondent:

            Honorable Mike McGrath, Montana Attorney General, Jennifer Anders, Assistant Attorney General, Helena, Montana; Brant S. Light, Cascade County Attorney, John Parker, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  June 1, 2004

Decided:  November 16, 2004

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Earl Gale Fellers (Fellers) appeals the judgment of the Eighth Judicial District Court, Cascade County, denying his motion to dismiss the drug charges against him.

¶2 We address the following issue on appeal and affirm: Did the District Court err in denying Fellers' motion to dismiss?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On February 15, 2002, around 6:45 a.m., Officer Damon Simmons (Officer Simmons) was dispatched to the Great Falls Albertson's grocery store to investigate a reported theft.

¶4 Upon arriving at Albertson's, Officer Simmons spoke with several employees, including Jonathan Madison (Jonathan). Jonathan stated that he observed two males enter the store and proceed to the medications aisle. At that point, Jonathan went upstairs to watch the males on the store's surveillance system.

¶5 Jonathan saw the two males open a cold medicine package and remove its contents. Thereafter, the two males proceeded to the checkout counter where they purchased a few items, although they did not purchase the cold medicine package.

¶6 The two males were confronted, after which they both fled the scene on foot. Jonathan and another employee pursued the two males, but they were unable to apprehend them so they returned to the store. At that point, Jonathan was told that the two males had returned for their truck, so he and two other employees attempted again to apprehend them by searching the area around the store for the two males.

¶7 In searching for the two males, Jonathan and the two other employees noticed a blue Camaro traveling slowly down the alley behind the store. The occupants of this blue

Camaro appeared to be looking for someone. Because their actions appeared suspicious, Jonathan and the two other employees suspected that the occupants of this vehicle may have been involved in the theft, so they noted the license plate number of the vehicle which had 31 county plates.

¶8 At that point, Officer Simmons arrived and was apprized of the situation. Jonathan provided him the license plate information, after which Officer Simmons examined the truck for which the two males had initially returned. In the bed of the truck, in plain view, Officer Simmons saw a gallon of Coleman fuel, a can of Draino, a bottle of green liquid, and a large gasoline container. The truck had a 31 license plate as well.

¶9 While waiting for backup, Officer Simmons observed a blue Camaro with the 31 license plate traveling around the Albertson's parking lot. Given that it had almost an hour since the reported theft and this blue Camaro had a 31 license plate, Officer Simmons and another officer conducted a traffic stop of the vehicle.

¶10 The officers identified the driver as Fellers and the passenger as Carolyn Snyder. Both suspects waived their Miranda rights. They both denied any involvement in the theft; however, they each had a different story as to where they came from and why they were driving around the parking lot for the past hour at such an early time in the day.

¶11 Based on their inconsistent stories and the fact that a theft had recently occurred, Officer Simmons asked Fellers for consent to search his vehicle. Fellers signed a written consent to search his vehicle.

3

¶12   Upon searching his vehicle, the officers discovered an unloaded firearm and a hollow pen tube that had a white powdery residue on the inside.  Fellers also had on his person a small bottle of a white powdery substance which apparently fell from Fellers' person as he was sitting in the patrol car.

¶13   Subsequently, Fellers was charged with Criminal Possession of Dangerous Drugs, a felony, and with Criminal Possession of Drug Paraphernalia, a misdemeanor.  Fellers pled not guilty to both charges.  He filed a motion to dismiss both charges, on the basis that the officers did not have particularized suspicion to search his vehicle.  The District Court denied his motion, noting that under the totality of the circumstances, Officer Simmons did have particularized suspicion.  The District Court also noted that the search was not illegal because Fellers both consented to the search and did not argue that his consent was not voluntary.

¶14   Ultimately, Fellers signed a plea agreement, pleading guilty to the felony charge of Criminal Possession of Dangerous Drugs, reserving his right to appeal the District Court's denial of his motion to suppress.  He received a two year suspended sentence.

¶15   Fellers now appeals the District Court's denial of his motion to dismiss.

**STANDARD OF REVIEW**

¶16     A district court's denial of a motion to dismiss in a criminal case is a conclusion of law which we review to determine whether that conclusion was correct. *State v. Leeson*, 2003 MT 354, ¶ 7, 319 Mont. 1, ¶ 7, 82 P.3d 16, ¶ 7.

**DISCUSSION**

¶17     **Did the District Court err in denying Fellers' motion to dismiss?**

¶18     Fellers argues that the State of Montana (the State) cannot establish that Officer Simmons had particularized suspicion to search Fellers' vehicle. Specifically, Fellers argues that the only "suspicious behavior" Officer Simmons had to predicate the stop of Fellers' vehicle was the fact that Officer Simmons was told a blue Camaro was driving down an alley a number of blocks away from the store and the occupants of that vehicle appeared to be looking for someone or something. Fellers contends that "[t]here is nothing illegal or suspicious about driving down a public alley looking for someone or something. . . ." And, as such, Fellers argues that Officer Simmons did not have particularized suspicion to stop his  vehicle.

¶19     The State argues that Fellers' argument "fails to view the facts in light of the totality of the circumstances," in that the law only requires an officer to have suspicion that someone has committed, is committing, or is about to commit an offense. As such, the State argues that based on the information provided to Officer Simmons regarding the blue Camaro and the fact that Officer Simmons himself observed the same blue Camaro with a 31 license plate circling the parking lot an hour after the reported crime, the officers had objective data from

5

which to infer and a resulting suspicion on which to suspect that the occupants of the blue Camaro had committed a crime, thereby justifying the investigatory stop of Fellers' vehicle. We agree.

¶20    Section 46-5-401(1), MCA, governs investigatory stops in Montana and states:

> In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

¶21    We have held that, for an investigatory stop to be reasonable, an officer must have: (1) objective data from which the officer can make certain inferences; and (2) a resulting suspicion that the person stopped is or has been engaged in wrongdoing. *State v. Bauer*, 2001 MT 248, ¶ 14, 307 Mont. 105, ¶ 14, 36 P.3d 892, ¶ 14. The question of whether an investigatory stop is supported by particularized suspicion must be viewed in light of the totality of the circumstances. *State v. Martinez*, 2003 MT 65, ¶ 23, 314 Mont. 434, ¶ 23, 67 P.3d 207, ¶ 23. Further, an officer need not actually personally observe illegal activity in order to have particularized suspicion to justify an investigatory stop. *State v. Elison*, 2000 MT 288, ¶ 20, 302 Mont. 228, ¶ 20, 14 P.3d 456, ¶ 20.

¶22    Here, upon Officer Simmons' arrival, Jonathan provided him the license plate number of the blue Camaro that he and two other Albertson's employees obtained when attempting to apprehend the two male shoplifters. This was a 31 license plate. Officer Simmons was then advised as to what had occurred at the store and the pursuit thereafter. He was told that Jonathan and two other employees observed the occupants of a blue Camaro suspiciously looking for someone in the alley behind Albertson's. Approximately an hour later, Officer

6

Simmons, while still investigating the theft, noticed that a blue Camaro with a 31 license plate kept driving around the parking lot, apparently looking for someone.

¶23 Based on the information provided to him and the observations he made, Officer Simmons initiated an investigatory stop of the blue Camaro. We hold that under the totality of the circumstances, Officer Simmons had particularized suspicion to conduct the investigatory stop. Specifically, Officer Simmons had objective data--the information provided by Jonathan and the two other employees coupled with Officer Simmons' own observations of the circling blue Camaro--from which to infer that the occupants of the vehicle were engaged in wrongdoing, and a resulting suspicion of the same. Consequently, we hold that the District Court did not err in denying Fellers' motion to dismiss.

¶24 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ JIM RICE