No. 93-404

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

      Plaintiff and Appellant,

v.

JOHN LILBURN,

      Defendant and Respondent.

FILED

JUN 9 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Hon. Joseph P. Mazurek, Attorney General,
Chris Tweeten (argued), Chief Deputy Attorney
General, Helena, Montana

          Mike Salvagni, Gallatin County Attorney,
Bozeman, Montana

      For Respondent:

          Richard Ranney (argued) and Shelton Williams,
Williams & Ranney, Missoula, Montana

          Noel K. Larrivee, Larrivee Law Offices,
Missoula, Montana

      For Amicus Curiae:

          Lon J. Dale, Milodragovich, Dale & Dye,
Missoula, Montana (Montana Shooting Sports
Association, Inc., Western Montana Fish and
Game Association, Inc., and Michigan
United Conservation Clubs)

Submitted:  April 19, 1994

Decided:  June 9, 1994

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant John Lilburn was charged in the Gallatin County Justice Court with the offense of hunter harassment in violation of § 87-3-142(3), MCA. He was convicted of that charge following a jury trial and appealed his conviction to the District Court for the Eighteenth Judicial District in Gallatin County. The District Court held that § 87-3-142, MCA, in its entirety, is facially unconstitutional in that it is both overbroad and vague, impermissibly infringing on the First Amendment right to free speech and the Fourteenth Amendment right to due process guaranteed by the United States Constitution.

We reverse the District Court.

The State raises the following issues on appeal:

1. Is Montana's Hunter Harassment Law, found at § 87-3-142, MCA, void because it is overbroad in violation of the First Amendment to the United States Constitution?

2. Is § 87-3-142, MCA, void because of vagueness in violation of the Fourteenth Amendment to the United States Constitution?

In March 1990, the Department of Fish, Wildlife, and Parks (DFWP) allowed three persons whose names had been drawn from a permit pool to hunt bison which had migrated from Yellowstone National Park. One of the persons who received a permit was Hal Slemmer.

On the morning of the hunt, when the DFWP personnel located the bison, a group of 11 persons on snowmobiles and cross-country skis were seen attempting to herd the bison back into the park.

2

The demonstrators were warned that this was a legal hunt, and were told not to interfere with the hunters. The hunters were also warned about the presence of the demonstrators and were cautioned to conduct the hunt safely.

Warden David Etzwiler of the DFWP accompanied Slemmer to a clearing where the bison were crossing. When one of the animals was in sight, Slemmer sighted his rifle and prepared to pull the trigger. At that time, John Lilburn, one of the protesters, moved in front of Slemmer, placing himself between Slemmer and the targeted bison at a distance of 10 to 12 feet from the muzzle of Slemmer's rifle. Slemmer lifted his rifle when he saw Lilburn's head and shoulders come into the scope of the gun. Warden Etzwiler approached Lilburn and told him that this was a lawful hunt and not to interfere. Slemmer moved about six feet to his left and selected another bison from the group. He raised his rifle and took aim through the scope. Lilburn again moved in front of Slemmer. Slemmer testified that when he saw Lilburn's face in his scope, he "jerked the gun up quickly because I had been squeezing on the trigger."

Warden Etzwiler and Slemmer got on their snowmobiles and moved to a different area where Slemmer shot and killed a bison before Lilburn and the other protesters caught up with them.

No arrests were made at that time. However, after DFWP officials conferred with the Gallatin County Attorney, Lilburn was charged with the offense of harassment, a misdemeanor, in violation of § 87-3-142(3), MCA. The complaint filed against Lilburn in the Gallatin County Justice Court alleged that he disturbed a hunter

3

with the intent to dissuade or prevent the taking of a bison when he placed himself between the bison and the hunter who was aiming a loaded rifle at the animal.

None of the other protesters were charged with a violation of this same statute.

Lilburn filed a declaratory judgment action in Federal District Court challenging the constitutionality of § 87-3-142(3), MCA, on a First Amendment basis. The U.S. District Court dismissed Lilburn's complaint, holding that there were no special circumstances warranting federal intervention in an ongoing state criminal action, and therefore, Lilburn's case did not merit an exception to the abstention doctrine enunciated in *Younger v. Harris* (1971), 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669. As a basis for its conclusion, the Federal Court concluded that the goal of the statute "is clearly reasonable" because "hunting is a legitimate activity which the state may protect in any reasonable and constitutionally permissible manner" and that this statute primarily "proscribes behavior which interferes with an individual actually engaged in the lawful taking of a wild animal."

The Ninth Circuit Court of Appeals subsequently affirmed the U.S. District Court's dismissal of Lilburn's constitutional challenge. *Lilburn v. Racicot* (9th Cir. July 13, 1992), No. 91-35310.

Lilburn was convicted following a jury trial in Gallatin County Justice Court. He appealed his conviction to the District Court and alleged that the harassment statute was unconstitutionally overbroad and vague. By order dated June 24, 1993, the District Court reversed the conviction and dismissed the complaint

4

brought against Lilburn based on its determination that § 87-3-142, MCA, is unconstitutional on its face, and therefore, is invalid. The State appeals.

A legislative enactment is presumed to be constitutional and will be upheld on review except when proven to be unconstitutional beyond a reasonable doubt. *City of Billings v. Laedeke* (1991), 247 Mont. 151, 154, 805 P.2d 1348, 1349 (citing *Fallon County v. State* (1988), 231 Mont. 443, 445-46, 753 P.2d 338, 339-40).

ISSUE 1

Is Montana's Hunter Harassment Law, found at § 87-3-142, MCA, void because it is overbroad in violation of the First Amendment to the United States Constitution?

The statute at issue in this appeal, commonly known as Montana's Hunter Harassment Law, provides as follows:

> **87-3-142. Harassment prohibited.** (1) No person may intentionally interfere with the lawful taking of a wild animal by another.
> (2) No person may, with intent to prevent or hinder its lawful taking, disturb a wild animal or engage in an activity or place in its way any object or substance that will tend to disturb or otherwise affect the behavior of a wild animal.
> (3) No person may disturb an individual engaged in the lawful taking of a wild animal with intent to dissuade the individual or otherwise prevent the taking of the animal.
> (4) Nothing in this section prohibits a landowner or lessee from taking reasonable measures to prevent imminent danger to domestic livestock and equipment.

Lilburn was convicted of violating subsection (3) of this statute because he twice disturbed Slemmer's attempt to lawfully shoot a bison when he placed his body between Slemmer and the animal. The District Court, in its analysis of subsection (3) for

5

overbreadth, concluded that § 87-3-142(3), MCA is "obviously content-based" because it "prohibits communication which is intended to dissuade a person from hunting, while allowing communication which encourages hunting." The court further concluded that the statute's prohibition would encompass "all verbal and expressive conduct which has the intention to dissuade from hunting," and therefore, such things as "prayer vigils at trailheads, the singing of protest songs or the burning of hunting maps, if done with the intent to dissuade a hunter, would be violations of the statute." Therefore, the court held that to the extent the statute "implicates constitutionally protected speech and expressive conduct, it is overbroad."

On appeal, the State contends that the court erred when it invalidated § 87-3-142(3), MCA, on the basis of overbreadth because the statute primarily proscribes conduct rather than speech, and to the extent that protected expression is reached, it regulates on a content-neutral basis only the time, place, and manner of expression. The State asserts that the statute is not overbroad because any potential unconstitutional applications are speculative and insubstantial when judged against the plainly legitimate scope of this statute which is to promote safety in sport hunting and protect those engaged in lawful activities from interference. We agree.

We note first that Lilburn has raised a facial constitutional challenge and does not aver that the statute, as applied to him, unconstitutionally abridges his First Amendment guarantee of freedom of speech. Lilburn was not charged on the basis of any

6

idea or view that he expressed, and he does not contend that his own conduct, which formed the basis of the charges brought against him, was constitutionally protected. Instead, he contends that the statute, as written, could potentially reach a substantial amount of protected speech or expressive conduct.

A facial overbreadth challenge is an exception to the general rule that statutes are evaluated in light of the situation and facts before the court. *R.A.V. v. St. Paul* (1992), 120 L. Ed. 2d 305, 336, 112 S. Ct. 2538, 2558 (J. White, concurring) (citing *Broadrick v. Oklahoma* (1973), 413 U.S, 601, 610, 93 S. Ct. 2908, 2915, 37 L. Ed. 2d 830, 838-39). This Court has similarly recognized that a statute which can be applied to constitutionally protected speech and expression may be found to be invalid in its entirety, even if it could validly apply to the situation before the court. *City of Whitefish v. O'Shaughnessy* (1985), 216 Mont. 433, 704 P.2d 1021.

In his overbreadth challenge, Lilburn disputes the State's assertion that the statute primarily regulates conduct but contends that it criminalizes a broad category of speech and expressive conduct based on its content. He claims that the law reaches primarily conduct which conveys an anti-hunting sentiment, while allowing, under exactly the same circumstances, conduct and speech which conveys any other message. Lilburn cites *R.A.V. v. St. Paul*, 120 L. Ed. 2d at 316, 112 S. Ct. at 2542, for the proposition that the statute is "facially unconstitutional in that it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses."

7

*Broadrick*, 413 U.S. at 601, is the leading case addressing the First Amendment overbreadth doctrine. In *Broadrick*, the Supreme Court clarified that a statute or government regulation should be invalidated on the basis of facial overbreadth in only limited situations:

> In such cases, it has been the judgment of this Court that the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes.
> . . .
>
> . . . Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. [Citations omitted].

*Broadrick*, 413 U.S. at 612-13. The Court in *Broadrick* adopted limitations on the overbreadth doctrine "particularly where conduct and not merely speech is involved," and held that a statute which has constitutional applications may be facially invalidated for overbreadth only if its overbreadth is "real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615. The Court made clear that the existence of imaginary potential unlawful applications does not by itself render a statute facially overbroad. *Broadrick*, 413 U.S. at 615.

In *Members of the City Council v. Taxpayers for Vincent* (1984), 466 U.S. 789, 800-01, 104 S. Ct. 2118, 2126, 80 L. Ed. 2d 772, 783-84, the

Supreme Court further explained the parameters of the overbreadth doctrine:

> It is clear . . . that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. On the contrary, the requirement of substantial overbreadth stems from the underlying justification for the overbreadth exception itself--the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the Court. . . . In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.

After reviewing the statute in question and the arguments set forth by Lilburn, we conclude that this is precisely the type of situation where the limitations imposed by the Supreme Court on the overbreadth doctrine must be carefully applied. Before the hunter harassment statute can be invalidated on its face, there must be a clear showing that the potential invalid applications of the statute be both "real and substantial." For the reasons stated below, we conclude that no such showing has been made in this case.

Under the tests articulated in *Broadrick* and *Taxpayers for Vincent*, we must determine whether there is a real and substantial probability that § 87-3-142(3), MCA, will compromise recognized First Amendment protections when judged in relation to any "plainly legitimate sweep" of the statute.

The District Court based its holding regarding overbreadth on its determination that the statute is "obviously content-based" and could potentially proscribe

> all verbal and expressive conduct which has the intention to dissuade from hunting. Conduct such as prayer vigils at trailheads, the singing of protest songs or the

9

burning of hunting maps, if done with the intent to dissuade a hunter, would be violations of the statute. [Emphasis added].

It was the court's opinion that the statute prohibits communication which is intended to dissuade a person from hunting, while allowing a communication which encourages hunting, even if such communication prevents or distracts a hunter from taking the prey. While this analysis was not necessary to an overbreadth analysis under *Broadrick*, we also disagree with this interpretation of the statute.

All statutes carry with them a presumption of constitutionality and it is a duty of the courts to construe statutes narrowly to avoid constitutional difficulties if possible. *Montana Automobile Association v. Greely* (1981), 193 Mont. 378, 382, 632 P.2d 300, 303; *State v. Ytterdahl* (1986), 222 Mont. 258, 261, 721 P.2d 757, 759. This Court made clear that, when construing a statute, it must be read as a whole, and terms used in the statute should not be isolated from the context in which they are used by the Legislature. *McClanathan v. Smith* (1980), 186 Mont. 56, 61, 606 P.2d 507, 510. Furthermore, a statute must be construed according to the plain meaning of the language used therein. *Norfolk Holdings, Inc. v. Department of Revenue* (1991), 249 Mont. 40, 43, 813 P.2d 460, 461.

Section 87-3-142(3), MCA, prohibits a person from disturbing another individual engaged in the lawful taking of a wild animal with intent to dissuade the individual or otherwise prevent the taking of the animal. The term "wild animal" is defined to mean "any game animal, fur-bearing animal, or predatory animal," and a

10

"taking" is defined to include "pursuit, hunting, trapping, shooting, or killing of a wild animal on land upon which the affected person has the right or privilege to pursue, hunt, trap, shoot, or kill the wild animal." Section 87-3-141, MCA.

The plain language of the statute, considered in light of these limiting definitions, makes clear that the statute's proscriptions reach only activities which occur in the field during an otherwise lawful hunt. While the disturbance which is prohibited may, under other circumstances, result from a verbal utterance, it makes no difference what the content of the verbal utterance is. The language of the statute does not support the assertion that the statute is aimed primarily at pure speech and expressive conduct conveying only an anti-hunting sentiment. The disturbance could just as well be caused by shouting "fire!"

Lilburn disagrees that the statute regulates primarily conduct and claims that the Legislature's inclusion of the word "dissuade" demonstrates that the intent of the statute is to proscribe only a very small class of expression which is uttered or carried out with the intent to dissuade a hunter from taking an animal. He contends it is the Legislature's use of the term "dissuade" that renders this a content-based regulation.

The Supreme Court has provided clear guidelines for distinguishing a content-neutral regulation from one which is impermissibly content-based:

> The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves

11

purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. [Citation omitted].

*Ward v. Rock Against Racism* (1989), 491 U.S. 781, 791, 109 S. Ct. 2746, 2754, 105 L. Ed. 2d 661, 675. The determination of whether a regulation is content-based turns not on whether its incidental effects fall more heavily on expression of a certain viewpoint, but rather on whether the governmental purpose to be served by the regulation is not motivated by a desire to suppress the content of the communication. *City of Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 41, 106 S. Ct. 925, 89 L. Ed. 2d 29. Therefore, even if a statute has a discriminatory impact, it can be determined to be content-neutral if its objective neither advances nor inhibits a particular viewpoint.

Neither of the parties dispute the fact that safety and an orderly regulation of hunting are legitimate state goals. This Court has made clear that "[i]n the area of wildlife regulation, it is sufficient to state the Legislature may impose such terms and conditions as it sees fit, as long as constitutional limitations are not infringed. *State v. Jack* (1975), 167 Mont. 456, 460, 539 P.2d 726, 728.

Here, the legislative history demonstrates a motivation for adoption of this statute which is unrelated to the suppression of speech based on content. The Legislature was aware that confrontations between hunters and opponents of sport hunting, particularly with respect to the controversial bison hunts, could occur in the field when hunters were armed and actively pursuing

12

their prey. It was recognized that this posed a serious danger to both the hunters and those interfering with their activities.

Contrary to the court's conclusion that the legislation was obviously content-based because it was prompted by past activities opposing the bison hunts, the legislative history supports a conclusion that the motivation was to prevent violent confrontations and to prevent interference with lawful activities. Moreover, we do not find any support in the legislative history for the contention that this was an attempt to silence the views of those opposed to the bison hunt or other types of sport hunting. It was recognized that persons opposed to sport hunting had the right to express their views, but that there were other forums more suited to political discourse.

While Lilburn asserts that the use of the word "dissuade" relates the statute entirely to speech and expressive conduct, we note that the Legislature did not use the word "dissuade" in isolation. Reading the statute as a whole, it is clear that the conduct proscribed is the "disturbance" of a hunter engaged in a lawful activity, when it is done with the intent to either dissuade the hunter or to prevent the taking of the animal. The fact that speech or actions may disturb a hunter is not dependent on the content of what is expressed, or whether it is prompted by an anti-hunting sentiment. A person could blurt out anything at the moment a hunter is trying to shoot, and this could "disturb" the hunter by distracting him or her, or by scaring the animal away. The content of what was said would be irrelevant. Or, persons could attempt to prevent the taking of the animal for reasons other

13

than opposition to hunting, such as a desire to shoot the animal themselves. Furthermore, in either of these instances, before the conduct would be culpable, the necessary scienter would have to be proven.

We recognize that the consequences of this statute may fall more heavily on persons opposed to hunting than on those with different viewpoints, but this does not by itself render the statute content-based. The existence of a content-neutral motivation for the statute is all that is required under *Ward* and *Renton* to refute the characterization that the statute impermissibly regulates speech or conduct based on the message conveyed. We are satisfied that such a motivation exists in this instance. Therefore, we reject the District Court's conclusion that the statute is content-based.

Even though we disagree with the District Court's rationale for a holding of overbreadth, we realize, as conceded by the State, that there may be instances where protected expression or pure speech may violate the statute. However, before invalidating the statute on the basis of overbreadth, we must consider the limitations set forth in *Broadrick* to determine if the possible unconstitutional applications are real and substantial when judged in relation to the plainly legitimate scope of the statute.

Lilburn contends that there are a significant number of situations where the law could be applied in an unconstitutional manner and urges the Court to "use our imagination to think of the various ways the statute might be applied against speech or

14

expressive conduct." However, the test is not whether hypothetical remote situations exist, but whether there is a significant possibility that the law will be unconstitutionally applied. *Broadrick*, 413 U.S. at 615.

Based on our conclusion that the plain language of the statute is directed primarily at conduct and if at speech, then without regard to its content, we conclude, in the absence of evidence otherwise, that Lilburn has not shown that any overbreadth of the statute is "substantial . . . judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

Finally, we address the District Court's comparison of the Montana statute to a Connecticut hunter harassment statute which was held unconstitutional on the basis of overbreadth. *Dorman v. Satti* (D. Conn. 1988), 678 F. Supp. 375, *aff'd*, 862 F.2d 432 (2nd Cir. 1988), *cert. denied* (1989), 490 U.S. 1099, 109 S. Ct. 2450, 104 L. Ed. 2d 1005.

The Federal District Court, when it rejected Lilburn's constitutional challenge, noted that Montana's hunter harassment statute is distinguishable from the Connecticut statute, and does not unconstitutionally interfere with free speech. In *Dorman*, the statute reached conduct which interfered with both the actual taking of game and with "acts in preparation" for the taking of game. The court held that the statute could legitimately proscribe interference with "lawful taking," but not "acts in preparation":

> So long as the legislature elects to permit hunters to pursue their activity on property, during times, and under circumstances set aside for that purpose, it may

15

also regulate the conduct of nonhunters in those contexts. Considerations of safety, alone, would justify such regulation, even if it impinges incidentally upon protected speech. On the other hand, the propriety of hunting and taking wildlife is a fair subject for spirited debate. Once a hunter is outside the scope of his "lawful hunt" he is no different from any other unreceptive listener who must, "in vindication of our liberties," be "exposed to the onslaught of repugnant ideas." [Emphasis added].

*Dorman*, 678 F. Supp. at 383.

The statute at issue in this case, § 87-3-142(3), MCA, is clearly limited in scope to activities which interfere with persons actively engaged in the lawful taking of an animal and does not suffer from the same overbreadth as the statute in *Dorman*.

We hold that § 87-3-142(3), MCA, is not unconstitutionally overbroad. To the extent that the statute may reach constitutionally protected expression, we conclude, as did the Supreme Court in *Broadrick*, 413 U.S. at 615-16, that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations where the statute is assertedly being applied unconstitutionally.

## ISSUE 2

Is § 87-3-142, MCA, void because of vagueness in violation of the Fourteenth Amendment to the United States Constitution?

The District Court also invalidated the hunter harassment statute on the basis of vagueness. The court concluded that several key terms are left undefined, and that the statute impermissibly leaves to the discretion of law enforcement and the courts, without specific statutory guidance to law enforcement

16

officers or the public at large, what type of conduct is prohibited.

In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 497, 102 S. Ct. 1186, 1193, 71 L. Ed. 2d 362, 371, the Supreme Court set forth guidelines for analyzing a facial challenge on the basis of overbreadth and vagueness. When such a challenge is raised, a court must first determine whether the enactment reaches a substantial amount of constitutionally protected conduct. Here we have concluded that the statute does not, and that the overbreadth challenge must fail. The Supreme Court has also made clear that if the challenged statute is reasonably clear in its application to the conduct of the person bringing the challenge, it cannot be stricken on its face for vagueness. *Hoffman Estates*, 455 U.S. at 494-95. "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. *Parker v. Levy* (1974), 417 U.S. 733, 756." *Hoffman Estates*, 455 U.S. at 495 n.7.

In this instance, regardless of the hypothetical situations that may exist, Lilburn's conduct was unquestionably proscribed by the hunter harassment statute. Lilburn intentionally twice stood between Slemmer and the targeted bison, directly in the line of fire, in order to prevent the animal from being shot. It is difficult to conceive of an argument that Lilburn did not "disturb" Slemmer while Slemmer was engaged in the lawful taking of a wild animal with the intent to prevent or dissuade him from making the shot.

17

We conclude that Lilburn does not have standing to raise a facial vagueness challenge. The court's order with respect to the issue of vagueness is reversed on this basis.

We reverse the District Court's conclusion that the statute under which Lilburn was charged is impermissibly overbroad and vague, and vacate the court's dismissal of the charges brought against Lilburn. Furthermore, although Lilburn's constitutional challenge focused only on subsection (3) of the statute, the language of the District Court's order invalidated § 87-3-142, MCA, in its entirety. We find no basis in the record for the court's determination that the remaining sections of the statute are constitutionally deficient. We, therefore, reverse the order of the District Court with regard to all parts of § 87-3-142, MCA.

This case is remanded to the District Court for further proceedings consistent with this opinion.

_____
                Justice

We concur:

_____
Chief Justice

_____

_____

_____

18

_John Conway Harrison_

_William E. Hundth_
Justices

19

June 9, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Hon. Joseph P. Mazurek, Attorney General
Chris Tweeten, Deputy
Justice Bldg.
Helena, MT 59620

Mike Salvagni
Gallatin County Attorney
615 S. 16th Ave., Rm. 100
Bozeman, MT 59715

Noel K. Larrivee
Larrivee Law Offices
334 E. Broadway
Missoula, MT 59802

Richard Ranney
WILLIAMS & RANNEY, P.C.
P. O. Box 9440
Missoula, MT 59807

Lon J. Dale, Esq.
MILODRAGOVICH, DALE & DYE P.C.
P.O. Box 4947
Missoula, MT 59806-4947

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy