NO.    94-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

      Plaintiff and Respondent,

   v.

SHAWN MARTEL,

      Defendant and Appellant.

FILED

AUG 24 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Twenty-First Judicial
               District,  In and for the County of Ravalli,
               The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          David E. Stenerson, Attorney at Law (argued),
          and Kirk Krutilla, Legal Intern,
          Hamilton,  Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          Carol Schmidt, Assistant Attorney General
          (argued), Helena, Montana

          James A. Haynes, Hamilton City Attorney,
          T. Geoffrey Mahar, Deputy City Attorney,
          Hamilton,  Montana

Submitted:  May 4, 1995

Decided:  August 24, 1995

Filed:

*[signature]*

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Shawn Martel was found guilty of misdemeanor stalking in Hamilton by a City Court jury. He appealed that conviction to the Twenty-First Judicial District Court, Ravalli county, where he was again found guilty following a bench trial. He appeals that conviction, claiming that Montana's anti-stalking law, as set forth at § 45-5-220, MCA, is unconstitutionally vague and unconstitutionally over-broad. We affirm.

The following issues are raised on appeal:

1. Is § 45-5-220, MCA, unconstitutionally vague?

2. Is § 45-5-220, MCA, unconstitutionally over-broad?

3. Did the District Court abuse its discretion when it denied defendant's motion for a directed verdict?

In October 1992, C.K., a teller at a local bank, first became aware of appellant, a customer of the bank. When C.K. worked at the drive-through window, she noticed that appellant would drive by, wave, and smile. When she was at the grocery store or buying gas, appellant would greet her and initiate conversation. Appellant frequently asked C.K. if she would meet him at a motel. At one point, appellant informed C.K. that he would commit suicide if they could not be friends. From October 1992 through November 1992, appellant followed C.K. daily, including sitting next to C.K. and her husband, R.K., in a movie theater. After the couple moved their seats, appellant moved and sat next to them.

2

Following the movie theater incident, C.K. informed R.K. for the first time of appellant's conduct. Thereafter, R.K. confronted appellant and asked him to leave his family alone. Several times on Christmas morning and once on New Year's Eve, appellant called C.K.'s home. During Christmas week, appellant pulled his vehicle behind and blocked off C.K.'s vehicle while she was filling up at a gas station. Appellant displayed a handgun and informed C.K. that he had friends who would "take care of" any efforts by C.K. to involve the police.

During January and February 1993, appellant followed C.K. less frequently than he had in the previous three months. However, in March 1993, after appellant increased his activity toward C.K., she filed a complaint against appellant. On March 25, 1993, the police warned appellant to stay away from C.K. and another woman. Appellant responded to the warning by following C.K. and circling her bank with increased frequency.

On April 9, 1993, Montana's stalking statute, § 45-5-220, MCA, came into effect. Appellant's conduct continued unchanged. In May 1993, C.K. and R.K. pulled into the parking lot of the Super 1 to rent a movie. Appellant and friends, who were in the adjacent Town Pump parking lot, began shouting profanities at C.K., made lewd gestures, and suggested that he and R.K. fight. C.K. and R.K. rented their movie without further incident and proceeded to drive down Route 93. Appellant, accompanied by a friend, followed R.K. and cut him off. R.K. decided to drive to the police station.

Appellant followed their car to the police station. Once there, appellant and R.K. began shouting and scuffling at the front door of the police station. An officer came out of the station and restored order.

In May 1993, C.K. and R.K. applied for a temporary restraining order against appellant. Following a hearing in city court, the temporary restraining order was issued. Despite the temporary restraining order, appellant continued the pattern of his conduct toward C.K. and R.K.

On May 14, 1993, the Hamilton Deputy City Attorney charged appellant with assault under § 45-5-201(a), MCA, disorderly conduct under § 45-5-101(b), (c), and (f), MCA, and stalking under § 45-5-220, MCA. A jury found appellant guilty of assault and stalking, but found him not guilty of disorderly conduct. Appellant appealed his conviction to the Twenty-First Judicial District Court. Appellant waived his right to a jury trial, and a trial was held de novo. Appellant filed a motion to dismiss the stalking charge arguing, that § 45-5-220, MCA, is void for vagueness and that it violates the due process provisions of the Montana and United States Constitutions. The District Court denied appellant's motion, concluding that § 45-5-220, MCA, is not unconstitutionally vague. The District Court found appellant guilty of stalking and sentenced appellant to serve one year in the Ravalli County jail with all but 14 days suspended upon certain conditions. Appellant appeals his conviction.

4

## STANDARD OF REVIEW

In an appeal of a criminal case, the evidence will be viewed in the light most favorable to the State. Whitefish v. O'Shaughnessy (1985), 216 Mont. 433, 437, 704 P.2d 1021, 1024. Further,

> the standard of review for a trial court's refusal to grant a defendant's motion for a directed verdict is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

State v. Mummey (1994), 264 Mont. 272, 276, 871 P.2d 868, 870.

Regarding the questions of constitutionality, statutes are presumed to be constitutional. Monroe v. State (1994), 265 Mont 1, 3, 873 P.2d 230, 233; United States v. National Dairy Products Corp. (1963), 372 U.S. 29, 32, 83 S. Ct. 594, 597, 9 L. Ed. 2d 561, 565. Whenever possible, the court will adopt statutory construction which renders challenged statutes constitutional rather than a construction which renders them invalid. State v Ross (Mont. 1995), 889 P.2d 161, 164, 52 St. Rep. 22, 24. When construing a challenged statute, the Court will read and interpret the statute as a whole, without isolating specific terms from the context in which they are used by the Legislature. Furthermore, a statute must be construed according to the plain meaning of the language in the statute. State v. Lilburn (1994), 265 Mont. 258, 266, 875 P.2d 1036, 1041, cert. denied (1995), 115 S. Ct. 726. When the constitutionality of a statute is challenged, the party making the challenge bears the burden of proving the statute

5

unconstitutional. <u>Monroe,</u> 873 P.2d at 231; GBN, Inc. v. Montana Dept. of Revenue (1991), 249 Mont. 261, 265, 815 P.2d 595, 597 Any doubt is to be resolved in favor of the statute. <u>GBN</u>, 815 P.2d at 597.

Section 45-5-220, MCA, provides as follows:

45-5-220. Stalking -- exemption -- penalty. (1) A person commits the offense of stalking if the person purposely or knowingly causes another person substantial emotional distress or reasonable apprehension of bodily injury or death by repeatedly:
(a) following the stalked person; or
(b) harassing, threatening, or intimidating the stalked person, in person or by phone, by mail, or by other action, device, or method.
(2) This section does not apply to a constitutionally protected activity.
(3) For the first offense, a person convicted of stalking shall be imprisoned in the county jail for a term not to exceed 1 year or fined an amount not to exceed $1,000, or both. For a second or subsequent offense or for a first offense against a victim who was under the protection of a restraining order directed at the offender, the offender shall be imprisoned in the state prison for a term not to exceed 5 years or fined an amount not to exceed $10,000, or both. A person convicted of stalking may be sentenced to pay all medical, counseling, and other costs incurred by or on behalf of the victim as a result of the offense.
(4) Upon presentation of credible evidence of violation of this section, an order may be granted, as set forth in 40-4-121, restraining a person from engaging in the activity described in subsection (1).
(5) For the purpose of determining the number of convictions under this section, "conviction" means:
(a) a conviction, as defined in 45-2-101, in this state;
(b) a conviction for a violation of a statute similar to this section in another state; or
(c) a forfeiture of bail or collateral deposited to secure the defendant;s appearance in court in this state or another state for a violation of a statute similar to this section, which forfeiture has not been vacated.
(6) Attempts by the accused person to contact or follow the stalked person after the accused person has been given actual notice that the stalked person does not

6

want to be contacted or followed constitutes prima facie evidence that the accused person purposely or knowingly followed, harassed, threatened, or intimidated the stalked person.

## ISSUE 1

Is § 45-s-220, MCA, unconstitutionally vague?

Appellant alleges that § 45-5-220, MCA, is so vague that it is unconstitutional. However, the issue of vagueness, with regard to a statute or ordinance, can be raised in two different connotations: (1) whether it is so vague the law is rendered void on its face; or (2) whether it is vague as applied in a particular circumstance. Choteau v. Joslyn (1984), 208 Mont. 499, 505, 678 P.2d 665, 668. It is unclear which of these two specific challenges appellant is raising, so we will address each in turn.

A. Is the statute so vague it must be void on its face?

"'[A] statute . is void [for vagueness] on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute.'" Monroe, 873 P.2d at 231 (quoting Choteau, 678 P.2d at 668). See also State v. Crisp (1991), 249 Mont. 199, 814 P.2d 981; State v. Woods (1986), 221 Mont. 17, 716 P.2d 624.

Appellant alleges that the statute is vague on its face because certain terms contained in it are not defined. Specifically, the statute does not define "repeatedly," "harassing," "intimidating," "reasonable apprehension," or "substantial emotional distress." Without recourse to definitions, appellant

7

argues, a person of ordinary intelligence would not be able to understand the statute.

The Legislature is not required to define every term it employs when constructing a statute. If a term is one of common usage, readily understood, it will be presumed that a reasonable person of average intelligence comprehends it. Contway v. Camp (1989), 236 Mont. 169, 173, 768 P.2d 1377, 1379. Words such as "repeatedly," "harassing," and "intimidating" have commonly understood meanings. "Repeatedly" means "more than once." "Intimidate" means "to make timid; to frighten." "Harass" means "to annoy repeatedly." Webster's Collegiate Dictionary, (10th Ed. 1993). A person of average intelligence would recognize and understand these terms without recourse to legislative definitions.

Appellant argues that the terms "reasonable apprehension" and "substantial emotional distress" are too vague because they employ a subjective standard, placing upon the defendant the burden of guessing how much distress is substantial or how much apprehension reasonable. We disagree. The standard to be employed when construing the statute is that of the "reasonable person." When faced with the conduct complained of, would a reasonable person feel apprehension or substantial emotional distress? A reasonable person standard is an objective one.

Further, the term "substantial emotional distress" has been examined by this Court within the context of the tort of intentional infliction of emotional distress. First Bank-Billings

8

v. Clark (1989), 236 Mont. 195, 771 P.2d 84. We found that the reasonable person standard was the most appropriate way of quantifying an abstract concept such as emotional distress. Such a standard is equally applicable here, and may be inferred from the language of the stalking statute.

The failure to include exhaustive definitions will not automatically render a statute overly vague, so long as the meaning of the statute is clear and provides a defendant with adequate notice of what conduct is proscribed.

> The complainant attacking a statute's validity must prove that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all."

Monroe, 873 P.2d at 231 (citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc. (1982), 455 U.S. 489, 495, n. 7, 102 S. Ct. 1186, 1191, 71 L. Ed. 2d 362, 369) (citation omitted).

"The fact that a statute is difficult to apply to some situations does not render it unconstitutionally vague." Monroe, 873 P.2d at 231.

B. Is the statute void for vagueness as applied to this defendant?

Appellant also argues that the statute is too vague as it applies to him, because it punished him for conduct which is constitutionally protected. However, appellant makes no showing that conduct such as repeatedly following and calling a person or pretending to shoot her is constitutionally protected. Indeed, the

District Court asked appellant to explain why he believes such conduct to be constitutionally protected. Appellant now argues that such a question unfairly shifts the burden of proof to him. In fact, it does not. As noted above, the person challenging the constitutionality of a statute has the burden of proving it is unconstitutional. Appellant cannot prove the statute unconstitutional merely by alleging that it infringes on constitutionally protected rights, without any factual showing of which rights are infringed, or how.

Further, the criminality of this particular offense rests not on the fact that a defendant has followed a particular course of conduct, which, if embarked upon once, might not be objectionable. The criminality of the offense arises when a defendant engages in such conduct repeatedly, purposely or knowingly causing another person substantial emotional distress or reasonable apprehension of bodily injury. Without such mental state, a charge under the statute must fail.

The United States Supreme Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of mens rea. Colautti v. Franklin (1979), 439 U.S. 379, 395, 99 S. Ct. 675, 685, 58 L. Ed. 2d 596, 609. The Court has recognized that the requirement of a mental state to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. Screws v. United States

(1945), 325 U.S. 91, 101, 65 S. Ct. 1031, 1035, 89 L. Ed. 1495, 1502-03.

In the case at bar, both the Hamilton City Court and the District Court found that appellant followed and harassed his victim repeatedly, and by so doing, intentionally caused her to suffer substantial emotional distress. Moreover, and contrary to appellant's argument, the law does not require that a victim manifest specific physical symptoms, such as sleeplessness or nausea, in order for the State to prove substantial emotional distress. The victim testified that she became frustrated, upset, angry, and scared because of appellant's repeated actions, and the District Court found that she had, in fact, suffered substantial emotional distress.

When read in the light most favorable to the State, the record more than justifies such a finding. Each element of the offense, including the required mental state, is set out with adequate specificity. We hold that the statute is not unconstitutionally vague either on its face or as applied in this case.

### ISSUE 2

Is § 45-5-220, MCA, unconstitutionally over-broad?

Appellant next argues that the stalking statute is unconstitutionally over-broad.

> An over-broad statute is one that is designed to burden or punish activities which are not constitutionally protected, but the statute includes within its scope activities which are protected by the First Amendment.

11

Hill v. City of Houston (5th Cir. 1985), 764 F.2d 1156, 1161, cert. denied (1987), 483 U.S. 1001, 107 S. Ct. 3222, 97 L. Ed. 2d 729.

Because an unconstitutionally over-broad statute could potentially adversely affect many citizens, a defendant who raises such a challenge need not meet the usual standing requirements. Broadrick v. Oklahoma (1973), 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830. "'[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.'" Lilburn, 875 P.2d at 1041 (quoting Members of the City Council v. Taxpayers for Vincent (1984), 466 U.S. 789, 800-01, 104 S. Ct. 2118, 2126, 80 L. Ed. 2d 772, 783-84).

An overbreadth challenge is "an exception to the general rule that statutes are evaluated in light of the situation and facts before the court." State v. Lilburn, 875 P.2d at 1036. Further,

The Court in Broadrick adopted limitations on the overbreadth doctrine "particularly where conduct and not merely speech is involved," and held that a statute which has constitutional applications may be facially invalidated for overbreadth only if its overbreadth is "real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

Lilburn, 875 P.2d at 1040 (quoting Broadrick, 413 U.S at 615, 93 S. Ct. at 2918)

In this case, it is conduct, and not merely speech, which is proscribed by the statute. In addition, the statute serves a plainly legitimate purpose--to discourage the repeated,

intentional, harmful conduct which constitutes stalking. Therefore, in order to prove that the statute is unconstitutional, appellant must show that the alleged overbreadth is both "real" and "substantial," not just to himself, but to others as well. But appellant makes no specific argument of how any constitutionally protected First Amendment activities have been infringed upon by this statute, or how the statute might adversely affect the rights of others in a way that is both real and substantial. Appellant has not shown that any of his--or anyone's--constitutional rights have been violated at all, let alone violated so grievously as to justify voiding the statute. Therefore, his overbreadth argument must fail.

ISSUE 3

Did the District Court err when it denied appellant's motion for a directed verdict?

The standard of review for determining whether a district court erred in denying a defendant's motion for directed verdict is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt. Mummey, 871 P.2d at 870.

Section 45-5-220(2), MCA, reads "[t]his section does not apply to a constitutionally protected activity." Appellant argues that, because the State did not prove that his conduct was not

13

constitutionally protected, it has failed to prove an essential element of the crime.

Appellant misreads the statute. The elements of the crime are set out in § 45-5-220(1), MCA. Subsection (2) of the statute represents an attempt by the Legislature to avoid potential constitutional problems, such as attempts to enforce the statute against investigative reporters or people walking a picket line. However, the Legislature recognized that they could not create a "laundry list" of all activities that are constitutionally protected. Instead, they inserted this section to reflect their intention that any constitutionally protected activity be exempted. It is not an element of the crime of stalking. The District Court found that the State proved, beyond a reasonable doubt, that appellant violated all the elements of the offense. This determination is supported by the record and will not be disturbed.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

14

_____

_____

Tony Trieweiler

_____

W. William Leaphart

_____

Justices