No. 96-288

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

DAVID NATHAN NYE,

Defendant and Appellant.



APPEAL FROM:      District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable William Nels Swandal, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Dan Yardley, Livingston, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Pamela P. Collins, Assistant
Attorney General, Helena, Montana; Tara Depuy, Park County Attorney,
Livingston, Montana



Submitted on Briefs: January 9, 1997

Decided:    July 23, 1997

Filed:


_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

David Nathan Nye (Nye) was charged by information with the offense of malicious intimidation or harassment relating to civil or human rights, a felony, in violation of 45-5-221, MCA. Nye pleaded guilty in the District Court for the Sixth Judicial District, Park County, pursuant to a plea agreement wherein he reserved his right to appeal the constitutionality of the statute. He now appeals his conviction. We Affirm.

We address the following issues on appeal:

1. Does 45-5-221, MCA, violate Nye's right to freedom of speech under the First Amendment to the United States Constitution and Article II, Section 7 of the Montana Constitution?

2. Did the District Court err in determining that 45-5-221, MCA, is not unconstitutionally vague?

3. Did the District Court err in determining that 45-5-221, MCA, is not unconstitutionally over broad?

4. Does 45-5-221, MCA, set penalties grossly disproportionate to the offense in violation of Nye's rights under the Eighth Amendment to the United States Constitution and Article II, Sections 22 and 28 of the Montana Constitution?

Factual and Procedural Background

On April 14, 1995, Nye and four other individuals affixed bumper stickers that read "NO I do not belong to CUT" on state and county road signs near Gardiner, Montana. They also placed the stickers in several mailboxes in the area and affixed them to property belonging to the Church Universal and Triumphant (CUT).

On April 26, 1995, Nye was charged by information with violating 45-5-221(1)(c), MCA, the "hate crimes" statute. He entered a plea of not guilty to the charge and was released on his own recognizance subject to certain conditions. On October 12, 1995, Nye filed a motion to dismiss the case on the grounds that 45-5-221(1)(c), MCA, is void for vagueness, over broad as applied to Nye, and in violation of Nye's constitutional rights. This motion was subsequently denied by the District Court.

The State filed an Amended Information on December 6, 1995, adding an alternative charge of accountability for malicious intimidation or harassment relating to civil or human rights. Nye pleaded not guilty to the charges in the Amended Information and was again released on his own recognizance subject to the conditions previously imposed.

On March 15, 1996, pursuant to a plea agreement, Nye withdrew his not guilty plea and pleaded guilty to the charge of malicious intimidation or harassment relating to civil or human rights, a felony. Pursuant to 46-12-204(3), MCA, Nye reserved his right to appeal the District Court's order denying his motion to dismiss.

On April 8, 1996, a sentencing hearing was held wherein the District Court ordered that sentencing be deferred for 18 months and that Nye be placed on probation

with the Department of Corrections.  Nye's sentence was ordered stayed pending appeal to this Court.

## Standard of Review

A district court's denial of a motion to dismiss involves a legal question that we review de novo to determine whether the district court's interpretation of the law is correct.  State v. Romero (Mont. 1996), 926 P.2d 717, 722, 53 St.Rep. 1050, 1052 (citing State v. Bullock (1995), 272 Mont. 361, 368, 901 P.2d 61, 66).

Section 45-5-221, MCA, the statute under which Nye was charged, provides:

Malicious intimidation or harassment relating to civil or human rights -- penalty.  (1) A person commits the offense of malicious intimidation or harassment when, because of another person's race, creed, religion, color, national origin, or involvement in civil rights or human rights activities, he purposely or knowingly, with the intent to terrify, intimidate, threaten, harass, annoy, or offend:

(a) causes bodily injury to another;

(b) causes reasonable apprehension of bodily injury in another; or

(c) damages, destroys, or defaces any property of another or any public property.

(2) For purposes of this section, "deface" includes but is not limited to cross burning or the placing of any word or symbol commonly associated with racial, religious, or ethnic identity or activities on the property of another person without his or her permission.

(3) A person convicted of the offense of malicious intimidation or harassment shall be imprisoned in the state prison for a term not to exceed 5 years or be fined an amount not to exceed $5,000, or both.

All statutes carry with them a presumption of constitutionality and it is the duty of the courts to construe statutes narrowly to avoid an unconstitutional interpretation if possible.  State v. Lilburn (1994), 265 Mont. 258, 266, 875 P.2d 1036, 1041 cert denied (1995), 513 U.S. 1078, 115 S.Ct. 726, 130 L.Ed.2d 630 (citing Montana Auto. Assn. v. Greely (1981), 193 Mont. 378, 382, 632 P.2d 300, 303; State v. Ytterdahl  (1986), 222 Mont. 258, 261, 721 P.2d 757, 759). This Court has made clear that, when construing a statute, it must be read as a whole, and terms used in the statute should not be isolated from the context in which they were used by the Legislature.  Lilburn, 875 P.2d at 1041 (citing McClanathan v. Smith (1980), 186 Mont. 56, 61-62, 606 P.2d 507, 510).  Statutes should be construed according to the plain meaning of the language used therein.  Lilburn, 875 P.2d at 1041 (citing Norfolk Holdings v. Dept. of Revenue (1991), 249 Mont. 40, 43, 813 P.2d 460, 461.

When the constitutionality of a statute is challenged, the party making the challenge bears the burden of proving the statute unconstitutional beyond a reasonable doubt.  State v. Martel (1995), 273 Mont. 143, 148, 902 P.2d 14, 17 (citing Monroe v. State (1994),

265 Mont. 1, 3, 873 P.2d 230, 231; GBN, Inc. v. Montana Dept. of Revenue (1991), 249 Mont. 261, 265, 815 P.2d 595, 597).  Any doubt is to be resolved in favor of the statute.  Martel, 902 P.2d at 18.

Issue 1.

Does  45-5-221, MCA, violate Nye's right to freedom of speech under the First Amendment to the United States Constitution and Article II, Section 7 of the Montana Constitution?

Nye argues on appeal that his acts of distributing the bumper stickers were meant to convey his beliefs and ideas, thus his conduct invokes his right to freedom of speech under the First Amendment to the United States Constitution and Article II, Section 7 of the Montana Constitution.  He compares his conduct to that of the defendant in Texas v. Johnson (1989), 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342, whose conviction for burning the American flag in violation of a Texas statute prohibiting the desecration of a venerated object was overturned by the United States Supreme Court as infringing on his First Amendment rights.

Johnson was one of more than 100 political demonstrators who marched through the streets of Dallas, Texas, during the 1984 Republican National Convention.  When the demonstrators reached Dallas City Hall, Johnson unfurled an American flag, doused it with kerosene, and set it on fire.  He was the only demonstrator charged with a crime.  In overturning Johnson's conviction, the Supreme Court held that the restrictions on Johnson's political expression were impermissibly content based.  Johnson, 491 U.S. at 412, 109 S.Ct. at 2544, 105 L.Ed.2d 342.  The Supreme Court also held that Johnson's actions were expressive conduct permitting him to invoke the First Amendment.  Johnson, 491 U.S. at 406, 109 S.Ct. at 2540, 105 L.Ed.2d 342.

The Supreme Court has made it clear that to be protected as "expressive conduct," the activity must be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments."  Spence v. State of Washington (1974), 418 U.S. 405, 409, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842.  Nye has not shown that his conduct meets this test.

In Wisconsin v. Mitchell (1993), 508 U.S. 476, 113 S.Ct. 2194, 124 L.Ed.2d 436, the United States Supreme Court held that bias-motivated speech, coupled with assaultive or other nonverbal proscribed conduct, is not protected by the First Amendment.  In that case, defendant's sentence for aggravated battery was enhanced because he intentionally selected his victim because of the victim's race.  The Supreme Court concluded that þviolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled to no constitutional

protection.þ
Mitchell, 508 U.S. at 484, 113 S.Ct. at 2199, 124 L.Ed.2d 436 (quoting Roberts v. United States Jaycees (1984), 468 U.S. 609, 628, 104 S.Ct. 3244, 3255, 82 L.Ed.2d 462).

In Lilburn we noted that the Supreme Court has provided clear guidelines for distinguishing a content-neutral regulation from one which is impermissibly content-based:

> The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.  The government's purpose is the controlling consideration.  A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.

Lilburn,  875 P.2d at 1042 (quoting Ward v. Rock Against Racism (1989), 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661).

"The determination of whether a regulation is content-based turns not on whether its incidental effects fall more heavily on expression of a certain viewpoint, but rather on whether the governmental purpose to be served by the regulation is not motivated by a desire to suppress the content of the communication."  Lilburn, 875 P.2d at 1042 (citing City of Renton v. Playtime Theaters, Inc. (1986), 475 U.S. 41,  106 S.Ct. 925, 89 L.Ed.2d 29).  In the case before us, the governmental purpose to be served by  45-5-221, MCA, is not to suppress the content of the communication, rather, it is to prohibit conduct that violates other criminal laws, such as assault, criminal mischief, and trespass, and that are committed against another person because of that person's race, religion or national origin with the intent to intimidate, harass or annoy that person.

Nye points out that many others in the Gardiner community have similar stickers affixed to their vehicles or in their windows as a protest against what they perceive to be objectionable practices of CUT.  However, Nye fails to recognize that the difference between his conduct and that of others in the Gardiner community is that the others he refers to placed the stickers on their own property while Nye placed the stickers on other people's property without their permission.  As the State asserts in its brief, if Nye had limited his attack on CUT to the display of  a bumper sticker on his car or living room window, the First Amendment would have protected his right to do so.  Nye lost his First Amendment protection when he coupled the message on the bumper sticker with defacement of the property of others.

Nye  has not argued that Article II, Section 7 of the Montana Constitution provides any different or greater protection for free expression than does the First Amendment of

the United States Constitution. Along those lines this Court has recognized that neither the First Amendment nor the Montana Constitution protect all speech:

There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problems. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words--those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas. . . .

State v. Cooney (1995), 271 Mont. 42, 48, 894 P.2d 303, 307 (quoting State v. Lance (1986), 222 Mont. 92, 102, 721 P.2d 1258, 1265; Chaplinsky v. State of New Hampshire (1942), 315 U.S. 568, 571-72, 62 S.Ct. 766, 769, 86 L.Ed.1031). Furthermore, "free speech does not include the right to cause substantial emotional distress by harassment or intimidation." Cooney, 894 P.2d at 307. Activities which are intended to embarrass, annoy or harass, as was the case here, are not protected by the First Amendment. State v. Helfrich (1996), 277 Mont. 452, 460, 922 P.2d 1159, 1164 (citing People v. Holt (Ill.App. 1995), 649 N.E.2d 571, 581).

Accordingly, we hold that 45-5-221, MCA, does not violate Nye's right to freedom of speech under the First Amendment to the United States Constitution or Article II, Section 7 of the Montana Constitution.

Issue 2.

Did the District Court err in determining that 45-5-221, MCA, is not unconstitutionally vague?

The issue of vagueness, with regard to a statute or ordinance, can be raised in two different connotations: (1) whether it is so vague that the law is rendered void on its face; or (2) whether it is vague as applied in a particular situation. Martel, 902 P.2d at 18 (citing City of Choteau v. Joslyn (1984), 208 Mont. 499, 505, 678 P.2d 665, 668). Nye claims that 45-5-221, MCA, is unconstitutionally vague on its face because the terms "annoy" and "offend" are not defined within the statute.

We have previously stated that a statute is void on its face "if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." State v. Brogan (1995), 272 Mont. 156, 168, 900 P.2d 284, 291 (citing State v. Crisp (1991), 249 Mont. 199, 202, 814 P.2d 981, 983). "No person should be required to speculate as to whether his contemplated course of action may be subject to criminal penalties." Brogan, 900 P.2d at 291. The Legislature need not define every term it employs when constructing a statute.

If a term is one of common usage and is readily understood, it is presumed that a reasonable person of average intelligence can comprehend it. Martel, 902 P.2d at 18-19 (citing Contway v. Camp (1989), 236 Mont. 169, 173, 768 P.2d 1377, 1379). The failure to include exhaustive definitions will not automatically render a statute overly vague, so long as the meaning of the statute is clear and provides a defendant with adequate notice of what conduct is proscribed. Martel, 902 P.2d at 19. The terms "annoy" and "offend" have commonly understood meanings. "Annoy" means to bother, irritate or harass, particularly by repeated acts. The American Heritage Dictionary 112 (2d college ed. 1985). "Offend" means to create or excite anger, resentment or annoyance or to cause displeasure. The American Heritage Dictionary 862 (2d college ed. 1985). These are terms of common usage and are readily understood, thus we can presume that a reasonable person of average intelligence would comprehend their meaning.

Nye contends that it is possible to find a person guilty under 45-5-221, MCA, if the victim were annoyed or offended by an action related to the victim's religion. Nye maintains that if the victim is sensitive about his or her religious beliefs, then almost any action would be likely to annoy or offend them. The United States Supreme Court has long recognized that the constitutionality of a "vague" statutory standard is closely related to whether that standard incorporates a requirement of mens rea. Martel, 902 P.2d at 19 (citing Colautti v. Franklin (1979), 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596). Thus the requirement of a mental state to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. Martel, 902 P.2d at 19-20 (citing Screws v. United States (1945), 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495). Indeed, contrary to Nye's assertions, 45-5-221, MCA, does not punish a defendant for offending or annoying another individual because of that individual's race, religion or national origin. The statute punishes a defendant for assaults and damage to property when that conduct is done with the intent to annoy or offend another individual because of that individual's race, religion or national origin.

The Supreme Court has made clear that if the challenged statute is reasonably clear in its application to the conduct of the person bringing the challenge, it cannot be stricken on its face for vagueness. Lilburn, 875 P.2d at 1044 (citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc. (1982), 455 U.S. 489, 495 n.7, 102 S.Ct. 1186, 1191 n.7, 71 L.Ed.2d 362). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Lilburn, 875 P.2d at 1044 (quoting Hoffman, 455 U.S. at 495 n.7, 102 S.Ct. at 1191 n.7, 71 L.Ed.2d 362). Section 45-5-221, MCA,

prohibits damaging, destroying or defacing the property of another with the intent to harass, annoy or offend because of another's race, religion or national origin. By affixing stickers to public and private property, Nye defaced that property. His actions were committed with the intent to harass, annoy or offend CUT members. Nye's actions clearly fall within the prohibitions of 45-5-221, MCA.

Accordingly, we hold that the District Court did not err in determining that 45-5-221, MCA, is not unconstitutionally vague on its face. Moreover, there is nothing in the record of this case which would support a conclusion that the statute is vague as applied to Nye's conduct.

Issue 3.

Did the District Court err in determining that 45-5-221, MCA, is not unconstitutionally over broad?

"An over-broad statute is one that is designed to burden or punish activities which are not constitutionally protected, but the statute includes within its scope activities which are protected by the First Amendment." Martel, 902 P.2d at 20 (quoting Hill v. City of Houston, Tex. (5th Cir. 1985), 764 F.2d 1156, 1161, cert. denied (1987), 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729). A facial overbreadth challenge is an exception to the general rule that statutes are evaluated in light of the situation and facts before the court. Lilburn, 875 P.2d at 1040 (citing R.A.V. v. City of St. Paul, Minn. (1992), 505 U.S. 377, 411, 112 S.Ct. 2538, 2558, 120 L.Ed.2d 305; Broadrick v. Oklahoma (1973), 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830).

Nye contends that 45-5-221, MCA, is unconstitutionally over broad because under the definition of "deface" in subsection (2) of the statute, a defendant could be found guilty if he merely placed the stickers in mailboxes if that act annoyed or offended a person's religious beliefs. However, the claimed overbreadth of a statute, must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep, particularly where conduct and not merely speech is involved. State v. Ross (1995), 269 Mont. 347, 353, 889 P.2d 161, 164 (citing Broadrick, 413 U.S. at 615, 93 S.Ct. at 2918, 37 L.Ed.2d 830). In the instant case, Nye has failed to demonstrate how the statute might infringe on another's constitutionally protected rights in a real or substantial way, especially when compared to the statute's wide variety of constitutional applications.

This Court has determined that when the claimed overbreadth of a statute is not

substantial and real, the statute is not unconstitutional on its face, but rather an unconstitutional application of the statute should be dealt with on a case-by-case basis.

Ross, 889 P.2d at 164 (citing New York v. Ferber (1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113).  In that regard, Nye's conduct of affixing the stickers to state and county road signs, mailboxes, as well as property belonging to CUT, was clearly a violation of  45-5-221(1)(c), MCA.  Even assuming that the damage to the mailboxes and road signs was, as argued by Nye, "nominal," nevertheless there was damage.  Moreover, the mailboxes and road signs were defaced within the definition of "deface" in  45-5-221(2), MCA.  Nye placed the anti-CUT stickers on the mailboxes and road signs.  Whether the word "deface" would have properly applied to his placing the stickers in the mailboxes  is irrelevant.  That was not the conduct for which he was convicted, and we do not find it necessary to address that argument.  Section 45-5-221(1)(c), MCA, clearly applied to and criminalized Nye's actual conduct at issue here.  Accordingly, we hold that the District Court did not err in determining that 45-5-221, MCA, is not unconstitutionally over broad on its face or as applied to Nye's conduct.

Issue 4.

Does  45-5-221, MCA, set penalties grossly disproportionate to the offense in violation of Nye's rights under the Eighth Amendment to the United States Constitution and Article II, Sections 22 and 28 of the Montana Constitution?

The penalty for violating  45-5-221, MCA, is imprisonment in the state prison for  a term not to exceed 5 years or a fine in an amount not to exceed $5,000, or both.

Section 45-5-221(3), MCA.  Nye contends on appeal that this penalty is so grossly disproportionate  to the crime he committed that it violates the Eighth Amendment of the United States Constitution and Article II, Sections 22 and 28 of the Montana Constitution.

The State contends that Nye is precluded from raising this issue on appeal because he failed to raise it in the court below.  As a result, when Nye pleaded guilty under  46-12-204(3), MCA, this issue was not preserved for appeal.  Section 46-12-204(3), MCA, provides:

With the approval of the court and the consent of the prosecutor, a defendant may enter a plea of guilty, reserving the right, on appeal from the judgment, to review the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, the defendant must be allowed to withdraw the plea.

In his motion to dismiss, Nye argued that  45-5-221(1)(c), MCA, violated his right to free speech, and was unconstitutionally over broad and vague.  He did not

argue
that the penalty provided for in the statute was grossly disproportionate to the crime with
which he was charged, as he now contends. Since Nye did not raise this issue below, it
was not decided either adversely or favorably to him by the District Court. Therefore,
there is no "adverse determination" to review on appeal regarding this issue. Section 46-
12-204(3), MCA.  Accordingly, we decline to address the merits of this issue.
Affirmed.

/S/   JAMES C. NELSON


We Concur:

/S/   TERRY N. TRIEWEILER
/S/   JIM REGNIER
/S/   W. WILLIAM LEAPHART
/S/   WILLIAM E. HUNT, SR.